IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


UNITED STATES OF AMERICA

v.  Criminal No. 3:08-CR-132

EDWARD H. OKUN,

Defendant.


**MEMORANDUM OPINION**

This matter is before the Court on the Defendant's, Edward H. Okun's ("Okun"), Motion to Sever Count Twenty-Seven of the Indictment. (Docket Number 127.) Okun argues that the Court should sever the last count of the Superseding Indictment, which charges him with making a false declaration, a violation of 18 U.S.C. § 1623(a). (Def. Mem. at 3.) Severance is appropriate, Okun argues, because the alleged false statement was made before the Court and that an eyewitness to the alleged act should not try that fact. (Id.) Okun alleges that, even if the Court is not actually prejudiced against him, the appearance of prejudice would be sufficient to taint his trial on the other twenty-six counts of the indictment. (Id. at 7.)

The United States objects, arguing that Okun is not prejudiced by joinder and that severance would prejudice the Government and cause a waste of judicial resources. (Gov. Mem. at 1.) For the reasons set forth below, the motion is denied.

## I. FACTS

The United States charges Hugh Edward Okun ("Okun") in a twenty-seven county Superseding Indictment with, inter alia, mail fraud, wire fraud, money laundering, and various counts of conspiracy. (Superseding Indictment, *hereinafter* SSI, at 5, 17, 19.) These charges arise from Okun's connection with the 1031 Tax Group ("1031TG"), Okun Holdings, and a number of other qualified intermediary ("QI") companies. Okun was the sole shareholder and owner of these corporations, though they did have other employees and officers.

The Superseding Indictment alleges that Okun was using money deposited in the QI companies by individuals, known as exchangers, for his own benefit. The exchangers deposited the proceeds from the sales of various taxable capital assets with the QIs, seeking to take advantage of Section 1031 of the Internal Revenue Code. That section allows individuals to avoid the tax on the capital gains on such assets if they deposit the proceeds from the sales of those assets with a QI and convert

those proceeds to an equivalent piece of property within a specified time period.

According to the Superseding Indictment, Okun removed the money deposited with the QIs from the insured bank accounts into which that money was to be deposited. Okun then spent that money to purchase assets for his own use and to support his lifestyle. It is further alleged that Okun, his companies, and the related officers and employees were deceiving the exchangers as to the disposition of their deposited funds and the financial situation of the QIs. Okun was also allegedly using some of the proceeds from those QIs to purchase other QIs for the purpose of using the funds deposited in those companies to keep his ever-expanding corporate family afloat. In essence, the Superseding Indictment charges Okun with running a large, somewhat unconventional Ponzi scheme.

Count Twenty-Seven of the Superseding Indictment alleges that Okun made a false statement before the Court during an evidentiary hearing held on November 7, 2007 concerning Okun's Motion to Quash a grand jury subpoena. (SSI at ¶¶ 59-62.) Allegedly, Okun claimed that a discussion with the Chief Legal Officer ("CLO") of one of his closely-held companies took place when it, in fact, did not. (Id. at 62.) It is alleged that the false claim was made in an attempt to influence the Court's

ruling on the Motion to Quash. These alleged facts provide the basis for a prosecution for a violation of 18 U.S.C. § 1623(a) for making a false declaration in violation of his oath.

Okun now moves the Court to sever Count Twenty-Seven from the remainder of the Superseding Indictment and hold a separate trial on that count. (Def. Mem. at 1.) Okun alleges that because the Court presided over the hearing in which his allegedly false statement was made, the Court is necessarily prejudiced against him on this count. (Id. at 3.) Furthermore, he claims that even the appearance of bias would be sufficient to bias the jury against him on this count. (Id. at 6.) The United States argues in opposition that Okun has not made a sufficient showing of prejudice so as to require severance and, further, that the Government itself would be prejudiced by such a severance. (Gov. Mem. at 1.)

## II. DISCUSSION

Fed. R. Crim. P. 8(a) permits a defendant to be charged with multiple counts in a single indictment if the offenses forming the basis for those charges are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." This permissive rule is balanced by Fed. R. Crim. P. 14(a) ("Rule 14(a)"), which states that such counts may be severed

when the joinder of counts "appears to prejudice a defendant or the government." There is a strong preference for joinder, however, and a party seeking severance has "an uphill battle." United States v. Mir, 525 F.3d 351, 357 (4th Cir. 2008).

A party seeking severance under Rule 14(a) has the burden of making a "strong showing of prejudice." United States v. Branch, 537 F.3d 328, 341 (4th Cir. 2008)(internal quotations omitted). A "conclusory assertion of unfairness" is insufficient to mandate severance. Id. Severance should only be granted when the defendant makes a showing of a "specific trial right" that would be violated or when the prejudice would "prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). Even if a showing of prejudice is made, a curative instruction is typically sufficient to cure any prejudice that results. See id.

Okun relies heavily on In re Murchison for support for his claim that prejudice will result if the Court presides over the trial adjudicating the charge set forth in Count Twenty-Seven. (Def. Mem. at 5-6; Def. Rep. at 5, 7.) The relevant facts in Murchison are as follows: pursuant to state statutes, a state-court trial judge presided as a "one man grand jury." 349 U.S. 133, 133-34 (1955). One of the witnesses testifying before the

grand jury apparently perjured himself, and the presiding judge charged him with contempt and scheduled a show cause hearing. Id. at 134. The presiding judge then convicted the defendant of contempt. Id. at 135. The Supreme Court found that the judge's actions violated the Due Process rights of the defendant, because the judge "was at the same time the complainant, indicter and prosecutor." Id. Therefore, the judge was not disinterested in the proceedings. Id. at 136.

Most relevant to the analysis of Okun's motion is the concern expressed by the Supreme Court that the judge would be unable to "free himself from the influence of what took place in his 'grand-jury' secret session." Id. at 138. Additionally, the procedural posture of the show cause hearing left the defendant unable to cross-examine the sole witness against him because that witness was presiding over the hearing. Id. at 138-39. Furthermore, the *in camera* nature of the grand jury proceedings left the defendant without even the possibility of presenting witnesses in his defense. Id. at 138.

United States v. Cassiagnol presented the Fourth Circuit with an issue similar to that in Murchison and it came to much the same conclusion. See 420 F.2d 868, 878 (4th Cir. 1970). In Cassiagnol, the Fourth Circuit overturned the conviction of a defendant when, during a bench trial, the presiding judge

indicated on the record that he had prejudged the defendant's guilt. See id. The conviction of a related defendant was overturned because the judge assumed the role of the prosecuting attorney during a jury trial by questioning the defendant in a hostile manner and attempting to coerce the defendant into giving particular answers. See id. In the same case, the conviction of a third defendant was upheld because the Fourth Circuit decided that simple sharp questioning of a defendant during a jury trial did not constitute prejudice. See id. at 877-78.

The concerns which animated the Murchison and Cassiagnol decisions are not present here. First, Okun made his allegedly false declaration in an open proceeding which was transcribed verbatim, not in a closed grand jury proceeding. Second, the Court did not initiate the charge at issue. Third, the Court is not prosecuting that charge or taking any actions traditionally within the purview of the prosecutor. Finally, a jury, not the Court, will be the finder of fact.

Okun also claims that the Court has "prejudged his guilt" on the charges set forth in Count Twenty-Seven. (Def. Rep. at 2.) It is correct that, in denying the Motion to Quash, the Court found that Okun's testimony was not credible based on both his demeanor on the witness stand and the inherent factual and

logical inconsistencies in his testimony. In re: Grand Jury Subpoena No. 07-1261, Mem. Op. at 10 (Nov. 16, 2007) (under seal). However, that ruling will not be made known to the jury, and thus will not "prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. Further, Okun has identified no "specific trial right" that the credibility ruling might compromise. Id.

Okun's next argument is that the appearance of prejudice exists, even if actual prejudice does not. (Def. Mem. at 7.) This assertion is based on the notion that, in some fashion, Okun's testimony and the Court's assessment of it might imperil Okun's due process rights, even if that assessment is never disclosed to the jury. (Def. Rep. at 7.) In support of this contention, Okun relies on Taylor v. Hayes, which held that apparent bias can suffice to render unfair a contempt trial by the judge before which the conduct occurred. 418 U.S. 488, 501 (1974). That decision, however, was based on the "running controversy" between the judge and the defendant and the judge's "mounting display of an unfavorable personal attitude toward" the defendant. Id. Okun has not identified either the presence of such a running controversy, or display of any personal attitude on the part of the Court, much less an unfavorable one. (See Def. Mem. at 7-8.)

In any event, the facts in this case are more appropriately measured by the decision in United States v. Mir, 525 F.3d 351, 357 (4th Cir. 2008). In Mir, the Fourth Circuit upheld a district court's denial of severance of a charge of witness tampering from the underlying substantive charges of fraud. See 525 F.3d at 356-57. Mir had allegedly instructed an associate to lie to a grand jury concerning the fraud allegations. See id. at 354. The prosecutor in the case sought to introduce the transcripts of the conversations between Mir and the witness during which the alleged witness fraud took place. Id. at 357. Mir sought to have the counts severed, alleging that there was no guarantee that the jury would consider those transcripts only for the witness tampering offense and not for the substantive charges. Id. The Fourth Circuit explained that permitting severance in this circumstance would:

> approach[] a *per se* requirement of severance whenever the government investigates new, uncharged crimes that are factually connected to a charged offense. We decline to adopt this principle, which has neither wisdom nor case law to commend it.

Id. at 357. The Court of Appeals continued to observe that such a requirement would severely hamper the administration of justice, as it would force a number of duplicative trials. See id. The prejudice alleged by Mir closely resembles that alleged

by Okun, as both concern the possibility of the jury's misuse of evidence concerning an attempt to conceal evidence related to an underlying substantive offense. See id. As in Mir, the Court finds that any prejudice that could conceivably result from the jury's need to simultaneously consider substantive and concealment evidence can be cured with an appropriate instruction, and is not sufficient to require severance. See id. at 357.

Because Okun has not made a sufficient showing to warrant severance of Count Twenty-Seven, it may not be necessary to assess whether the United States would be prejudiced by a severance. However, in this case, it is best to assess that issue now. Okun claims that the United States would suffer no prejudice from a severance, because the conduct in Count Twenty-Seven is factually discrete from the remainder of the indictment. (Def. Mem. at 8.) The United States responds that it would be prejudiced in two ways: first, it would need to make duplicative offers of proof in two different proceedings; second, it would prevent the United States from using Okun's apparent attempt at suppressing evidence of his guilt to prove his consciousness of guilt. (Gov. Mem. at 10-11.)

The contention that judicial economy would be harmed by severance is well-taken. The Fourth Circuit has consistently

stated that judicial economy is a relevant factor in deciding whether to sever. See, e.g., Mir, 525 F.3d at 357; U.S. v. Cardwell, 433 F.3d 378, 385 (4th Cir. 2005); U.S. v. Acker, 52 F.3d 509, 513 (4th Cir. 1995) (danger of prejudice must outweigh judicial economy of unified trial for severance to be appropriate). Further, the United States correctly asserts that a separate trial would require it to offer duplicative evidence in order to provide the necessary background for the alleged false declaration. See Mir, 525 F.3d at 357 ("Requiring separate trials every time the government obtains post-indictment evidence on a related but distinct crime would generally impede the prosecution of criminal activity.").

The second argument is that severing Count Twenty-Seven would prevent the United States from presenting relevant evidence concerning the other twenty six counts of the indictment. The United States is correct that the probative effect that the evidence pertaining to the count that would be severed may have on the other counts is an appropriate factor for consideration. See United States v. Peoples, 748 F.2d 934, 936 (4th Cir. 1984) ("[The Defendant] does not establish unfair prejudice because evidence of flight is admissible to prove guilty conscience and evidence of the underlying offense is admissible to prove motive for flight."). The evidence of

Okun's false statement, allegedly made in an attempt to suppress evidence of his crime, may well be admissible as circumstantial evidence going of his intent and his consciousness of guilt respecting the other crimes with which he is charged. See United States v. Young, 248 F.3d 260, 272, 273-74 (4th Cir. 2001) (citing United States v. Hughes, 716 F.2d 234, 241 (4th Cir. 1983); see also United States v. Reamer, 589 F.2d 769, 770 (4th Cir. 1978). That issue need not be resolved now. Nor is it necessary to decide whether a severance would foreclose admission of that evidence in the trial of the first twenty-six counts.

## III. CONCLUSION

For the reasons set forth above, the Defendant's Motion to Sever (Docket Number 127) will be denied.

It is so ORDERED.

/s/ *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: ~~January __, 2009~~
February 2, 2009 /REP/