IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


UNITED STATES OF AMERICA

v.                                      Criminal No. 3:08-CR-132

EDWARD H. OKUN,

               Defendant.


## MEMORANDUM OPINION

This matter is before the Court on four of the Defendant's, Edward H. Okun's ("Okun"), motions. All of the motions involve challenges to the sufficiency of the SSI or request bills of particulars for various counts, so it is appropriate to consider these motions simultaneously. The four motions in question are Okun's Motion to Dismiss Counts One and Three through Eighteen or, in the Alternative, for a Bill of Particulars (Docket Number 124) (*hereinafter* "Def. First. Mem."), Motion to Dismiss Count Seventeen and Sever Count Twenty-Six or, in the Alternative, for a Bill of Particulars (Docket Number 125) (*hereinafter* "Def. Second Mem.), Motion to Dismiss Counts Nineteen through Twenty-One or, in the Alternative, for a Bill of Particulars (Docket Number 126) (*hereinafter* "Def. Third Mem."), and Motion for a

Bill of Particulars Regarding Count Twenty-Two (Docket Number 128) (*hereinafter* "Def. Fourth Mem.").

The substantive bases for each of these motions and the United States' responses thereto will be discussed in turn. For the reasons set forth below, all of the above-listed motions will be denied, except for the Defendant's Motion to Dismiss Counts One and Three through Eighteen or, in the Alternative, for a Bill of Particulars (Docket Number 124), which already has been granted in part, by the Order entered February 2, 2009 (Docket Number 149), and to the extent that motion was not granted in the February 2, 2009 order, it will be denied.

## I. FACTS

The United States charges Hugh Edward Okun ("Okun") in a twenty-seven count indictment with, <u>inter alia</u>, mail fraud, wire fraud, money laundering, and various counts of conspiracy. (Superseding Indictment, *hereinafter* SSI, at 5, 17, 19.) The Counts of the SSI are as follows:

- Count 1 - Wire and Mail Fraud Conspiracy

- Count 2 - Money Laundering Conspiracy

- Counts 3-15 - Wire Fraud

- Counts 16-18 - Mail Fraud

- Counts 19-21 - Money Laundering (Promotion)

- Count 22 - Money Laundering (Concealment)

-2-

- Counts 23-25 - Money Laundering (18 U.S.C. § 1957)
- Count 26 - Bulk Cash Smuggling
- Count 27 - False Declaration

These charges arise from Okun's connection with the 1031 Tax Group ("1031TG"), Okun Holdings, and a number of other qualified intermediary ("QI") companies. Okun was the sole shareholder and owner of these corporations, though they did have other employees and officers.

The SSI alleges that Okun was using, for his own benefit, money deposited in the QI companies by individuals, known as exchangers. The exchangers deposited the proceeds from the sales of various taxable capital assets with the QIs, seeking to take advantage of Section 1031 of the Internal Revenue Code. That section allows individuals to avoid the tax on the capital gains on such assets if they deposit the proceeds from the sales of those assets with a QI and convert those proceeds to an equivalent piece of property within a specified time period.

According to the SSI, Okun removed the money deposited with the QIs from the insured bank accounts into which that money was to be deposited. Okun then spent that money to purchase assets for his own use, to support his lifestyle, to pay significant salaries to coconspirators, and to purchase other QIs for the purpose of using the funds deposited in those companies to keep

-3-

his ever-expanding corporate family afloat. It is further alleged that Okun, his companies, and the related officers and employees were deceiving the exchangers as to the disposition of their deposited funds and the financial situation of the QIs. In essence, the SSI charges Okun with running a large, somewhat unconventional Ponzi scheme.

Okun has now filed several Motions to Dismiss various counts of the SSI and for bills of particulars concerning those counts and others. (Docket Numbers 124-26, 128.) In sum, Okun seeks the dismissal or bills of particulars for Counts 1, and 3-22. The United States objects to each of the Defendant's motions, arguing that the SSI is sufficient in all respects and that, when combined with the extensive discovery that has been undertaken in this case, Okun is entitled to neither dismissal of nor to a bill of particulars for any count. (See, e.g., United States' Memorandum in Opposition to Defendant's Motion to Dismiss Counts One and Three Through Eighteen, hereinafter Gov. First Mem., at 1.) Each of Okun's motions, and the attendant Counts of the SSI, will be considered in turn.

## II. DISCUSSION

### A. Standard of Review

### 1. Sufficiency of an Indictment

-4-

In order to be sufficient, an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  An indictment, or any count thereof, that is insufficient is subject to dismissal. See United States v. Cuong Gia Le, 310 F.Supp.2d 763, 772 (E.D.Va. 2004).

The Fourth Circuit has established a three-part test to determine whether an indictment meets the requirements of Fed. R. Crim. P. 7. The indictment must "(1) allege the essential facts constituting the offense; (2) allege each element of the offense, so that fair notice is provided; and (3) be sufficiently distinctive that a verdict will bar a second prosecution for the same offense." United States v. Bolden, 325 F.3d 471, 490 (4th Cir. 2003).  Generally, an indictment which tracks the statutory language and provides sufficient factual specificity to put the defendant on notice of the charges against him is valid. See United States v. Fogel, 901 F.2d 23, 25 (4th Cir. 1990).  The recitation of the elements of the offense must include non-statutory elements (i.e., those created by judicial interpretation) as well as statutory elements and must provide the defendant with enough specificity to give him notice of the offense with which he is charged under the relevant statute. See United States v. Hamling, 418 U.S. 87, 118 (1974).

-5-

## 2. Request for a Bill of Particulars

Fed. R. Crim. P. 7(f) permits a court to order the United States to file a bill of particulars, which is designed as a remedy for an indictment which does not provide sufficient facts to enable the defendant to prepare his defense. See Cuong Gia Le, 310 F.Supp.2d at 773.

The bill of particulars is intended to identify for the defendant "the area within which the United States's chief evidence will fall." United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996). The bill of particulars is not intended to provide the defendant with detailed information concerning that evidence, however; it is designed to provide enough information to allow the defendant to prepare for trial. Id. (citing United States v. Automated Medical Labs, Inc., 770 F.2d 399, 405 (4th Cir. 1985)). A bill of particulars cannot repair a defective indictment, but it can provide missing or additional information that is necessary to assist the defendant. Id. (citing United States v. Howard, 590 F.2d 564, 567 (4th Cir. 1979)). A bill of particulars is likely to be unnecessary when the United States maintains an "open file" policy on disclosure, if the defendant receives the information necessary to prepare for trial from that file. See United States v. Amend, 791 F.2d 1120, 1125 (4th Cir. 1986). Similarly, if the indictment provides sufficient

-6-

information to put the defendant on notice of the facts underlying the charges against him, a bill of particulars is unnecessary. See id. at 1125-26.

## B. Counts One and Three through Eighteen

### 1. Sufficiency

The first step in deciding upon the sufficiency of an indictment is to determine the elements of the offense charged. See Bolden, 325 F.3d at 490-91. Count One of the SSI charges Okun with Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. § 1349. Counts Three through Fifteen charge Okun with Wire Fraud in violation of 18 U.S.C. § 1343. Counts Sixteen through Eighteen charge violations of 18 U.S.C. §§ 1341 and 1342 - Mail Fraud. Mail and wire fraud have two essential elements: (1.) a scheme to defraud or to obtain money by false pretenses and (2.) use of the mails or wire communications in furtherance of that scheme. See United States v. Allen, 491 F.3d 178, 185 (4th Cir. 2007); United States v. Curry, 461 F.3d 452, 457 (4th Cir. 2006). The United States also must demonstrate that the defendant possessed the specific intent to defraud. See South Atlantic Ltd. Partnership of Tennessee v. Riese, 284 F.3d 518, 531 (4th Cir. 2002).

A scheme to defraud is a scheme "to wrong[] one in his property rights by dishonest methods or schemes, and usually

signif[ies] the deprivation of something of value by trick, deceit, chicane or overreaching." United States v. Coyle, 943 F.2d 424, 427 (4th Cir. 1991) (internal quotations omitted). A scheme to defraud does not necessarily require affirmative misrepresentations; proof of such a scheme "can be shown by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or avert further inquiry into a material matter." United States v. Colton, 231 F.3d 890, 901 (4th Cir. 2000). In essence, what is important to the determination is:

> whether the defendant "fraudulently produc[ed] a false impression upon the mind of the other party; and if the result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff.

Id. The United States is not required to prove, and hence not required to allege, exactly when the fraudulent intent (and thereby the fraud itself) first materialized. See Curry, 461 F.3d at 458. Furthermore, a series of initially innocent actions can become a scheme to defraud if the defendant later forms the required fraudulent intent. See id.

If violation of the statutes by means of misrepresentation is alleged, the misrepresentations involved must be material, but actual reliance on the misrepresentations need not be shown; if

the allegation is of scheme to defraud by concealment, the fact concealed must be material. See Neder v. United States, 527 U.S. 1, 25 (1999). A false statement or omission is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." Id. at 16 (internal quotations omitted).

While an indictment which tracks the language of the charging statute is generally sufficient, an indictment charging a mail or wire fraud must also "furnish the accused with such a description of the charge against him as well enable him to make his defence [sic]." United States v. Loayza, 107 F.3d 257, 260 (4th Cir. 1997). The indictment is not required to identify specific victims by name, however. Id. Indeed, the focus of the indictment in charging mail or wire fraud is on the defendant's intent. See id. (citing United States v. Arlen, 947 F.2d 139, 145 (5th Cir.1991)). In Loayza, the Fourth Circuit upheld a mail fraud indictment which contained "[t]he time period, the scheme, the purported investment companies, the 'cover-up' of the diversion of funds, and the use of the mail to carry out the scheme." Id.

As an initial matter, Counts One and Three through Eighteen closely track the statutory language of the relevant statues, and therefore are valid. See Fogel, 901 F.2d at 25; Amend, 791 F.2d

at 1125-56. Counts Three through Eighteen indicate that Okun violated the mail and wire fraud statutes by use of both a scheme to defraud and a scheme to obtain property by making fraudulent, material misrepresentations. In fact, the SSI contains almost exactly the same information as the indictment that was held to be sufficient in Loayza. See 107 F.3d at 260.

Okun, however, alleges two defects in Counts Three through Eighteen: first, that they fail to identify any misrepresentations; second, that they fail to allege how any misrepresentations were material. (Def. First Mem. at 8, 10.) The root of Okun's first claim is that Counts One and Three through Eighteen do not identify the allegedly fraudulent misrepresentations. (Def. First. Rep. at 4-5.) Okun argues that, because the exchangers had already deposited their funds into the QIs at the time Okun gained control over them, he did not make a misrepresentation that led to his obtaining the money or property of another. (Id.)

The United States' response is twofold: first, it argues that Okun's original purchase of the QIs was simply a first step in his broader scheme to defraud. (Gov. First Supp. at 7.) The SSI is sufficient in its description of a scheme to defraud, as defined in Colton. See 231 F.3d at 899-901. The SSI alleges the property alleged to have been misappropriated, the means by which

-10-

Okun gained control over that property, and that he attempted to conceal material facts from the rightful owners of that property. The facts alleged in the SSI are sufficient to generate a reasonable inference that Okun's conduct generated "a false impression upon the mind of the other party" and that he planned to obtain money or property pursuant to that false impression. See id. at 901. Furthermore, even if the initial purchases of QIs were not fraudulent, those purchases could rightly be charged as a part of Okun's overall scheme if a fraudulent intent emerged later in his course of conduct. See Curry, 461 F.3d at 458. Therefore, Counts Three through Eighteen sufficiently allege a scheme to defraud, and Okun's argument for their dismissal fails on this point.

The United States' second ground for arguing the sufficiency of Counts Three through Eighteen is that Okun allegedly made misrepresentations and material omissions to the QI owners in order to induce them to sell the QIs to him, so that he could pilfer their client exchange funds. (Gov. First. Supp. at 8.) As the United States admits, factual support for this theory in the SSI is weak. (Id.) Nowhere does the indictment directly allege such misrepresentations, but there are sufficient facts in the SSI to create an inference of such misrepresentations. (See SSI at ¶¶ 16, 20, 33-34.) The SSI sufficiently pled the existence of

-11-

an overall scheme to defraud, however, so the absence of the specific misrepresentations does not cause Counts Three through Eighteen to fail. When combined with the adequate description of Okun's overall scheme, the inference of such misrepresentations serves to put Okun on notice of the nature of the charges against him. See Loayza, 107 F.3d 261.

The sufficiency of pleading with respect to exchange clients who signed exchange agreements after Okun gained control of the relevant QI is somewhat clearer. The SSI goes to great lengths to identify the violation of the exchange agreements and sufficiently indicates the presence of individuals who deposited money pursuant to those agreements. (See SSI at ¶¶ 8, 15, 17, 19-24, 31-32, 37-39.) Okun's conduct would certainly have met the "obtaining money by false pretenses" facet of the mail and wire fraud statutes if these allegations were true. See Curry, 461 F.3d at 457. Thus, while the SSI is far from a model of clarity, it is sufficient to meet the minimum pleading standards set forth in Bolden and Loayza. See 325 F.3d at 490-91; 107 F.3d at 260.

As to Okun's argument respecting materiality, Counts Three through Eighteen plainly, and in the language of the statute, allege that the alleged misrepresentations were material. The United States is not required to identify with particularity the way in which a particular misrepresentation was material. See

-12-

Loayza, 107 F.3d at 261. Indeed, the United States is not required to disclose its theory of the case in detail; it must only put the defendant on notice of the charges against him. See id. The detailed allegations of the transactions involved and the money transfers at issue found in the SSI, when combined with a clear allegation of materiality are certainly sufficient to meet this standard. Therefore, Okun's motion to dismiss Counts One and Three through Eighteen of the SSI is denied.

## 2. Bill of Particulars

As noted above, the Court, through its Order of February 2, 2009, has granted Okun's motion for a Bill of Particulars as to Counts One and Three through Eighteen. The United States has complied with this Order. (See Bill of Particulars, Docket Number 164.) Nothing further is required.

## C. Counts Seventeen and Twenty-Six

## 1. Sufficiency

Count Seventeen charges Okun with a violation of 18 U.S.C. § 1341 - Mail Fraud. In Count Seventeen, the SSI alleges that Okun had mailed to him in the Bahamas a package containing $15,000 in cash. It further alleges that this mailing was "for the purposes of executing the scheme and artifice to defraud described above and to obtain money by means of material false and fraudulent pretenses." (SSI at ¶ 47.) Okun alleges that this count is

-13-

insufficient because it does not allege a sufficient nexus between the mailing and the scheme to defraud. (Def. Second Mem. at 5.)

It is certainly true that the mail fraud statute only applies in "those limited instances in which the use of the mails is a part of the execution of the fraud." Kann v. United States, 323 U.S. 88, 95 (1944). The Supreme Court also noted in its later decision in Schmuck v. United States:

> To be part of the execution of the fraud, however, the use of the mails need not be an essential element of the scheme. It is sufficient for the mailing to be incident to an essential part of the scheme or a step in the plot.

489 U.S. 705, 710-11 (1989) (internal citations and quotations omitted). Mailings which are merely "post-fraud accountings among the potential victims" are insufficient to create liability under 18 U.S.C. § 1341; however, innocent, routine mailings may suffice and the mailing need not affirmatively assist the perpetrator in carrying out his scheme. Id. at 714.

Furthermore, mailings made after the property which is the object of the fraud is obtained may still satisfy the statute. See U.S. v. Pierce, 409 F.3d 228, 232-33 (4th Cir. 2005).[1]  In

---

[1] To the extent that Okun relies on the Fourth Circuit's decision in United States v. Keenan, 657 F.2d 41, 43 (1981), for the opposite rule, his reliance is misplaced. (See Def. Second Mem. at 7-8.) The Fourth Circuit's decision in Keenan predated the Supreme Court's decision in United States v. Lane, 474 U.S. 438,

essence, if a mailing is made in an effort to keep the fraud scheme active and ongoing, it has a sufficient nexus to the scheme to satisfy the statute. See id. Okun's claim that it is legally impossible for the mailing set forth in Count Seventeen to constitute mail fraud because it occurred after the proceeds of the scheme were realized by Okun is therefore incorrect.

Okun's contention that Count Seventeen is insufficient because the SSI does not allege that the funds were proceeds of the scheme, i.e., were stolen exchanger funds, fails for similar reasons. (Def. Second Rep. at 3.) Nowhere in the statute or in any of the applicable case law is it required that the mailing contain proceeds of the scheme or the property obtained by misrepresentations. All that is required is that the mailing be incidental to a step in that scheme or to one of those misrepresentations. See Schmuck, 489 U.S. at 710-11.

Okun's final claim is that Count Seventeen does not set forth sufficient factual allegations. (Def. Second Rep. at 3-4.) Okun is correct that the indictment must set forth "the essential facts constituting the offense." Bolden, 325 F.3d at 490-91. As discussed in Section II.B.1, above, the SSI identifies the scheme

---

451-52 (1986), which stated that "[m]ailings occurring after receipt of the goods obtained by fraud are within the statute" if they were designed to assist in the fraudulent scheme. Later Fourth Circuit precedent, such as Pierce, is based on the Supreme Court's holding in Lane. See 409 F.3d at 232.

to defraud and the misrepresentations used to obtain property that form the core of the mail fraud indictment. The SSI also identifies, with particularity, the mailing in question. (Id. at ¶ 47.) It is not required that the SSI provide specific facts describing the manner in which the mailing assisted Okun's fraud. It is enough to allege that it did and provide sufficient facts to support such an inference. See Fogel, 901 F.2d 25. Okun is certainly on notice of the specific offense with which he is charged, has been provided with facts sufficient to put him on notice of the basis of that offense, and is in no danger of double jeopardy on these facts. See Bolden, 325 F.3d at 490-91. Therefore, Count Seventeen is legally sufficient and Okun's motion to dismiss Count Seventeen is denied.

## 2. Severance of Count Twenty-Six

As a companion to his motion to dismiss Count Seventeen, Okun has also moved that Count Twenty-Six be severed from the remainder of the charges in the SSI. (Def. Second Mem. at 10.) It is not necessary for the Court to address this issue because Okun's motion to dismiss Count Seventeen has been denied. In the interest of fairness, however, it is appropriate to address the merits of Okun's contention at this time.

Count Twenty-Six alleges a violation of 31 U.S.C. § 5332 – Bulk Cash Smuggling. This bulk cash smuggling charge results

-16-

from the same mailing of $15,000 that forms the basis for the "use of the mails" element of Count Seventeen's mail fraud charge. Okun argues that, without the mail fraud charge based on this mailing, the mailing has no connection to Okun's alleged scheme or the remainder of the counts in the indictment. (Def. Second Mem. at 11.) Therefore, he contends that joinder of Count Twenty-Six is improper if Count Seventeen is dismissed. (Def. Second. Rep. at 4-5.) Okun further argues that, even if joinder is proper, he is prejudiced by combining the trial on Count Twenty-Six with the remainder of the SSI in the absence of Count Seventeen because the presence of the extraneous evidence might incline the jury to find him guilty. (Def. Second Mem. at 11.)

Fed. R. Crim. P. 8(a) permits a defendant to be charged with multiple counts in a single indictment if the offenses forming the basis for those charges are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." This rule provides for very broad joinder of offenses, but there must be some connection other than merely the presence of the same defendant. See U.S. v. Mackins, 315 F.3d 399, 412-13 (4th Cir. 2003). A sufficient relationship between offenses exists "when consideration of discrete counts against the defendant paints an incomplete picture of the defendant's criminal

-17-

enterprise." <u>U.S. v. Cardwell</u>, 433 F.3d 378, 385 (4th Cir. 2005). The appropriateness of joinder can be determined by examining the allegations in the indictment for the presence of a relationship between the charged crimes. <u>See</u> <u>id.</u>

Count Twenty-Six bears a logical relationship to the other offenses, even in the absence of Count Seventeen. The source of the funds for the offense charged in Count Twenty-Six was the same bank account into which allegedly misappropriated client exchange funds were deposited. (<u>See</u> SSI at ¶ 47.) Furthermore, the same subordinate coconspirators with whom the remainder of the scheme was carried out served as coconspirators in this crime. (<u>See</u> SSI at ¶ 56.) In essence, the bulk cash smuggling shows, as the United States argues, the use of the misappropriated funds which are the focus of the majority of the SSI and provides valuable context for the remaining counts. (Gov. Second Resp. at 6, 11-12.) Therefore, the connection between Count Twenty-Six and the remainder of the SSI is sufficient even in the absence of Count Seventeen.

Fed. R. Crim. P. 14(a) states that a count, even if properly joined may be severed when the joinder "appears to prejudice a defendant or the government." There is a strong preference for joinder, however, and a party seeking severance has "an uphill battle." <u>United States v. Mir</u>, 525 F.3d 351, 357 (4th Cir. 2008).

A party seeking severance under Fed. R. Crim. P. 14(a) has the burden of making a "strong showing of prejudice." United States v. Branch, 537 F.3d 328, 341 (4th Cir. 2008)(internal quotations omitted). A "conclusory assertion of unfairness" is insufficient to mandate severance. Id. Severance should be granted only when the defendant makes a showing of a "specific trial right" that would be violated or when the prejudice would "prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). Even if a showing of prejudice is made, a curative instruction is typically sufficient to negate the prejudicial effect. See id.

Okun has provided no more than a conclusory assertion of prejudice. (See Def. Second Mem. at 11.) Okun is correct that a relevant consideration in deciding upon motions to sever is the evidence that will be available in a joined trial that would not be available if those trials were severed. See Cardwell, 433 F.3d at 385. The issue of what evidence of Okun's alleged broader scheme might be admissible in a trial on Count Twenty-Six alone need not be decided now. Okun has not demonstrated that the prejudice from such evidentiary mixing would be sufficient to imperil the jury's factfinding ability – he has done no more than assert that it would. (See Def. Second Mem. at 11.) An unsupported assertion of prejudice is insufficient to meet the

-19-

test set by Branch. See 537 F.3d 341. Furthermore, even assuming such a level of prejudice existed, Okun has made no showing that the presumption that a curative instruction is sufficient has been overwhelmed - once again, he makes only a conclusory allegation. See Zafiro, 506 U.S. at 539. Therefore, Okun's motion to sever Count Twenty-Six would be denied on the merits, even if the issue were not mooted by the denial of his motion to dismiss Count Seventeen.

### 3. Bill of Particulars

As an alternative to dismissal of Count Seventeen, Okun requests a bill of particulars as to that count, alleging that he needs further factual information concerning the nexus between the mailing and the scheme to defraud. (Def. Second Mem. at 7-8.) The purpose of a bill of particulars is to provide the defendant with the information necessary for him to prepare a defense - it is not a general device by which a defendant can obtain discovery. See Fletcher, 74 F.3d at 53.

Count Seventeen of the SSI provides all necessary information: it identifies and describes the scheme and identifies the mailing in question with particularity. Hence it plainly identifies the area in which the United States' evidence will fall. See Fletcher, 74 F.3d at 53. A bill of particulars is

-20-

therefore unnecessary as to the nexus element of the mail fraud alleged in Count Seventeen, and Okun's motion will be denied.

**D. Counts Nineteen through Twenty-One**

**1. Sufficiency**

Counts Nineteen through Twenty-One of the SSI charge Okun with violations of 18 U.S.C. §§ 1956(a)(1)(A)(i), offenses known as "promotion" money laundering. In order for an indictment to sufficiently allege the crime of promotion money laundering, it must allege: that the defendant knew "that property involved in a financial transaction represents the proceeds of some specified unlawful activity;" that the transaction affected interstate commerce; and that the defendant attempted to conduct that financial transaction "intending to promote the carrying on of specified unlawful activity." United States v. Bolden, 325 F.3d 471, 486-87 (4th Cir. 2003) (internal quotations omitted).

The basis for dismissal asserted by Okun is that the Supreme Court's recent decision in United States v. Santos, 128 S.Ct. 2020 (2008), renders Counts Nineteen through Twenty-One of the SSI insufficient. (Def. Second Mem. at 4-5.)  Okun argues that Santos establishes the principle that, for purposes of promotion money laundering, the "proceeds" of unlawful activity must be "profits" from that activity, and not merely receipts. (Def. Mot. at 5.)  Based on that interpretation, Okun alleges that Counts

-21-

Nineteen through Twenty-One are legally insufficient because they do not allege that any proceeds from the specified unlawful activity, i.e., the alleged mail and wire fraud, were profits instead of proceeds. (Id. at 10.)

In Santos, the defendant, Santos, ran a lottery which was illegal under state law. 128 S.Ct. at 2022. Santos employed a number of paid assistants to help running the lottery. Id. at 2023. A grand jury indicted Santos for, inter alia, promotion money laundering based on the payments he made to these assistants and to the lottery winners. Id. Santos challenged his conviction based on a Seventh Circuit Court of Appeals decision which held that, in the context of the money laundering statute, "proceeds" should be defined as "profits," rather than simply receipts. Id.

Justice Scalia, writing for a plurality of four justices, found that the term "proceeds," as used in the money laundering statute, was ambiguous. See id. at 2024-25. Justice Stevens, in his concurring opinion, agreed that the term was ambiguous in the context of the specified unlawful activity of running an illegal lottery. See id. at 2031-32. Thus, both the plurality and Justice Stevens agreed that the rule of lenity, which compels that the most "defendant-friendly" reading of the statute, be applied in Santos's case. See id. at 2025, 2033-34.

-22-

Santos was decided by a plurality opinion dependent upon a concurring vote for its majority, so "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193 (1977) (internal quotations omitted).  Justice Scalia, writing for the plurality, recognized this as the correct basis on which to interpret the scope of the Santos decision. See 120 S.Ct. at 2031 (citing Marks, 430 U.S. at 193) ("Since [Justice Stevens'] vote is necessary to our judgment, and since his opinion rests upon the narrower ground, the Court's holding is limited accordingly.").

Justice Scalia indicates that the narrowest ground is the "finding that 'proceeds' means 'profits' when there is no legislative history to the contrary." Id.  That reading, however, conflicts with Justice Steven's express statements in the concurring opinion, in which he responds to Justice Scalia's statement by noting that his opinion is based on his "conviction that Congress could not have intended the perverse result that the dissent's rule would produce if its definition of 'proceeds' were applied to the operation of an unlicensed gambling business." Id. at 2034 n.7.  Therefore, by Justice Steven's own words, his opinion was based on the specific character of the

-23-

underlying criminal activity at issue in Santos, i.e., illegal
gambling.

Some courts have construed Santos broadly, following Justice
Scalia's dicta in the plurality opinion. See, e.g., United States
v. Yusuf, 536 F.3d 178, 186 (3d Cir. 2008); United States v.
Thompson, No. 3:06-CR-123, 2008 WL 2514090, *1-2 (E.D.Tenn.
2008); United States v. Hedlund, No. CR. 06-346-DJL, 2008 WL
4183958, *6 (N.D.Cal. 2008); United States v. Poulsen, 568
F.Supp.2d 885, 913-914 (S.D.Ohio) (in dicta). Many courts have
used procedural methods and alternative holdings to avoid dealing
with this difficult interpretive issue altogether. See, e.g.,
United States v. Brown, __ F.3d __, 2008 WL 5255903, *9-10 (5th
Cir. 2008). Others, however, have followed Justice Steven's
express statement limiting his decision to its facts. See, e.g.,
United States v. Fleming, 287 Fed.Appx. 150, 155 (3rd Cir.
2008)(unreported); United States v. Prince, No. 04-20223-JPM,
2008 WL 4861296, *7-8 (W.D.Tenn. 2008); United States v. Orosco,
No. 07-cr-00275-EWN, 2008 WL 4194878, *2-4 (D.Colo. 2008).

The Fourth Circuit, in a recent unpublished decision, has
joined the latter group in holding that "Santos does not
establish a binding precedent that the term 'proceeds' means
'profits,' except regarding an illegal gambling charge." United
States v. Howard, Nos. 07-4146, 07-4147, 07-4168, 2008 WL 205649,

-24-

*9-10 (4th Cir. 2009) (unreported). Therefore, the Fourth Circuit indicated that precedent which provides the definition of proceeds to be receipts in contexts other than illegal gambling still binds this court. See id. (citing United States v. Singh, 518 F.3d 236, 247 (4th Cir. 2005)). The Court finds that the weight of precedent in this area, when considered in combination with Justice Stevens' express statements in his concurring opinion, indicates that Okun's interpretation of the holding in Santos is incorrect and that his motion to dismiss should therefore be denied because the SSI is clearly sufficient in identifying the funds at issue in the money laundering counts as proceeds from earlier specified unlawful activity.

Even if Okun were correct in his interpretation of Santos, however, he has not demonstrated that the SSI is insufficient as to Counts Nineteen through Twenty-One. Counts Nineteen through Twenty-One allege that Okun transferred money by wire for the purchase of three QIs. The Counts further allege that the money transferred was the proceeds from earlier instances of mail or wire fraud, i.e., the misappropriation of exchange funds from earlier-purchased QIs. Finally, the SSI alleges that the purpose of these transactions was to facilitate further acts of mail and wire fraud. The SSI provides a date, amount, and detailed description of each of the transfers in question, and also

correctly alleges the required jurisdictional and <u>mens rea</u> elements of promotion money laundering.

Once again, it is worth noting as an initial matter that, because Counts Nineteen through Twenty-One track the statutory language, they are presumptively sufficient. <u>See</u> <u>Fogel</u>, 901 F.2d at 25. Okun's sole argument for the insufficiency of these counts is that they fail to allege that the proceeds involved in the above-described transactions were the profits of earlier unlawful activity. (Def. Mem. at 10.) According to Okun, because the transferred funds were used to purchase QIs for the purpose of meeting earlier obligations, <u>i.e.</u>, to keep the alleged Ponzi scheme running, the funds were being used "to defray the costs associated with the alleged scheme." (Def. Mem. at 7.) Therefore, under Okun's interpretation of <u>Santos</u>, these funds would not qualify as profits. (<u>Id.</u>)

The plurality opinion in <u>Santos</u> described the United States' burden under the "profits" interpretation as follows:

> [T]o establish the proceeds element under the "profits" interpretation, the prosecution needs to show only that a single instance of specified unlawful activity was profitable and gave rise to the money involved in a charged transaction. . . . [T]he factfinder will not need to consider gains, expenses, and losses attributable to other instances of specified unlawful activity, which go to the profitability of some entire criminal enterprise. What counts is whether the receipts from the charged unlawful act exceeded the costs fairly attributable to it.

128 S.Ct. at 2029. Thus, the broad, schematic approach proffered by Okun is contradicted by Justice Scalia's express direction in Santos. See id. The SSI alleges that the funds at issue in each of the three promotion money laundering counts were derived from earlier instances of mail or wire fraud. (See SSI at ¶¶ 17, 19, 22.) The relevant costs, for purposes of the Santos analysis, are the necessary costs incurred by Okun in obtaining *those* funds, i.e., the funds that were transferred to effectuate the later QI purchases. See 128 S.Ct. at 2029 n.7 ("it will be up to the Government to select that period of time for which it can most readily establish the necessary elements of the charged offenses, including (if money laundering is one of them) profitability").

Payments of earlier QI obligations, while they may have been necessary to maintain the financial health of the alleged scheme as a whole, are not costs fairly attributable to obtaining of those specific funds at issue in Counts Nineteen through Twenty-One. See id. While there may have been some costs associated with the wire transfers of those funds, "the receipts from the charged unlawful act exceeded the costs fairly attributable to it." Santos, 128 S.Ct. at 2029. The funds at issue, therefore, were profits under the definition set forth in Santos. See id. Thus, even under Okun's interpretation, Counts Nineteen through

-27-

Twenty-One are legally sufficient and his motion to dismiss those Counts is denied.

## 2. Bill of Particulars

Okun's motion for a bill of particulars respecting Counts Nineteen through Twenty-one is based on the same theory as his motion to dismiss those counts, i.e., that the United States has not indicated how the funds at issue were profits instead of proceeds. (Def. Third Mem. at 10.)  Therefore, Okun's motion for a bill of particulars is denied for the reasons set forth in Section II.D.1, above - namely, that Santos does not require that proceeds of mail or wire fraud be profits. See Howard, 2008 WL 205649 at 9-10.  Furthermore, even if "proceeds" does mean "profits" in this context, the United States has provided sufficient facts to allow Okun to prepare for trial.  A bill of particulars is therefore unnecessary, and Okun's motion is denied. See Fletcher, 74 F.3d at 53.

## E. Count Twenty-Two

Count Twenty-Two of the SSI charges Okun with a violation of 18 U.S.C. § 1956(a)(1)(B)(i), i.e., concealment money laundering. Okun's motion for a bill of particulars on Count Twenty-Two of the SSI is based on the same faulty premise as his motion to dismiss Counts Nineteen through Twenty-One, i.e., that the United

-28-

States is required to demonstrate that the proceeds of the specified unlawful activity are profits. (Def. Fourth Mem. at 7.)

Therefore, this motion is denied for the reasons set forth above in Section II.D.1. Furthermore, even if the United States is required to prove that "proceeds" means "profits" in the context of mail and wire fraud, the SSI sets forth sufficient information to allow the Defendant to prepare for trial. A bill of particulars is therefore unnecessary, and Okun's motion is denied. See Fletcher, 74 F.3d at 53.

### III. CONCLUSION

For the reasons set forth above, all of the Defendant's motions herein considered (Docket Numbers 124-26, 128) will be denied, except as to the grant of the request for a bill of particulars as provided in the Order entered February 2, 2009 (Docket Number 149).

It is so ORDERED.

_____ /s/        REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 18, 2009