

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA

v.                                    Civil Action No. 3:08CR132

EDWARD HUGH OKUN

**MEMORANDUM OPINION**

The matter is before the Court on the "MOTION FOR NEW TRIAL or, in the alternative, MOTION FOR SETTING ASIDE THE FINDING OF THE JURY" (ECF No. 407), "MOTION FOR DEFAULT JUDGMENT AGAINST THE RESPONDENT/GOVERNMENT," (ECF No. 462), and "REQUEST FOR SUMMARY JUDGMENT" on pending motions (ECF NO. 464) filed by Edward High Okun.  The Government has responded.  These matters are ripe for disposition.

**I.    PROCEDURAL HISTORY**

On March 17, 2008, a grand jury returned a three-count indictment charging Okun with mail fraud, bulk cash smuggling, and one count of making a false declaration.  (ECF No. 1.)  On July 10, 2008, a grand jury returned a twenty-seven count Superseding Indictment charging Okun with conspiracy to commit wire fraud and mail fraud, conspiracy to commit money laundering, thirteen counts of wire fraud, and multiple other counts of mail fraud, money laundering, bulk cash smuggling, and making a false declaration.  (ECF No. 42.)  On February 27,

2009, the Court granted the Government's motion to dismiss one wire fraud count and one mail fraud count (Counts 9 and 18). (ECF No. 207.)

On March 3, 2009, the jury trial commenced. After the Government rested its case, Okun moved for a judgment of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29. (ECF No. 232.) The Court granted the motion with respect to the two remaining mail fraud charges (Counts 16 and 17), but denied the motion on the remaining counts. (Id.) Okun put forth no evidence in his defense. After two-days of deliberations, the jury returned its verdict, finding Okun guilty of the remaining twenty-three counts. (ECF No. 243.)

On August 4, 2009, the Court sentenced Okun to 1200 months of imprisonment, a downward variance from the guidelines range of 4800 months of imprisonment. (J. 3, ECF No. 328.) Okun appealed, and on November 17, 2011, the United States Court of Appeals for the Fourth Circuit affirmed Okun's conviction and sentence. United States v. Okun, 453 F. App'x 364, 374 (4th Cir. 2011). On April 16, 2012, the United States Supreme Court denied a petition for certiorari. Okun v. United States, 132 S. Ct. 1953, 1953 (2012). On March 12, 2012, Okun filed his "MOTION FOR NEW TRIAL or, in the alternative, MOTION FOR SETTING ASIDE THE FINDING OF THE JURY." Since that time, Okun has

2

inundated the Court with frivolous filings.  As explained below, both Okun's "MOTION FOR SETTING ASIDE THE FINDING OF THE JURY" ("Rule 29 Motion") and his "MOTION FOR NEW TRIAL" ("Rule 33 Motion") will be denied.

## II.  RULE 29 MOTION

Under Federal Rule of Criminal Procedure Rule 29(c)(1), a "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1).  The jury returned its guilty verdict on March 19, 2009.  Okun filed the current Rule 29 Motion nearly three years later on March 12, 2012.  Accordingly, Okun's Rule 29 Motion is untimely filed and will be denied.

## III. RULE 33 MOTION

### A.   Summary of Evidence

The Fourth Circuit aptly summarized the evidence of Okun's guilt as follows:

> In 2005, Okun was the sole owner of Investment Properties of America (IPofA), a Virginia limited liability company, with its principal place of business in Richmond, Virginia.  IPofA was involved in the business of commercial real estate investment and management.  In 2005, Okun formed 1031 Tax Group, a Delaware limited liability company with its principal place of business in Richmond.
> In connection with 1031 Tax Group, Okun became involved in the business of operating qualified

3

intermediary (QI) companies.[1]   Between August 2005 and
December 2006, Okun acquired six different QI
companies, which in turn became subsidiaries of 1031
Tax Group.

After acquiring his first QI company, Atlantic
Exchange Company (AEC), Okun began to wire AEC client
funds to his personal bank account and IPofA's bank
account, with the assistance of Lara Coleman, IPofA's
Chief Operating Officer.   During the conspiracy,
Coleman continued to assist Okun in the fraudulent
scheme, which enabled Okun to use money held by the QI
companies on behalf of the exchangers for personal use
and for purposes related to IPofA's business.   The
uses of the funds held by the QI companies were not
disclosed to the exchangers and were in violation of

---

[1]   Section 1031 of the Internal Revenue Code
permits individuals (exchangers) to defer the payment
of capital gains tax on the sale of certain assets
when such assets are properly exchanged in a "like
kind" exchange.   26 U.S.C. 1031.   In general, a like-
kind exchange occurs when one piece of property is
sold and, within a given period of time, a similar
piece of property is purchased.   The like-kind
exchange allows the exchanger to delay recognizing a
gain on the sold property, as the tax basis of the
sold property carries forward to the newly-acquired
property. Thus, the recognition of a gain and the
payment of capital gains tax are delayed.   Id.
§ 1031(d).   For the newly-acquired property to qualify
as "like kind," it must be identified within forty-
five days and be purchased within one hundred and
eighty days of the sale of the sold property.   Id.
§ 1031(a)(3).   In addition, the exchanger must not
receive the proceeds from the sale of the sold
property, either actually or constructively, during
the prescribed period.   26 C.F.R. § 1.1031(k)-1(a).   A
QI company can be used to hold the sale proceeds in
the interim, preventing the exchanger's receipt of the
funds.   Id. § 1.1031(k)-1(g)(4).   The Internal Revenue
Code and regulations contain no requirement or
restriction as to how the QI company is to hold the
proceeds and, so far as the Internal Revenue Code is
concerned, the QI company may invest the proceeds.
Such investment typically is governed by the agreement
between the exchanger and the QI company.

the agreements between the exchangers and the QI companies.

In 2007, Janet Dashiell, who had managed one of the QI companies acquired by Okun, began to work for 1031 Tax Group. Dashiell alerted the government to the manner in which the QI funds were being used by Okun and 1031 Tax Group.

In May 2007, 1031 Tax Group filed for bankruptcy. The collapse of 1031 Tax Group ultimately resulted in a loss in excess of $125 million dollars to exchangers who had deposited funds with the QI companies affiliated with 1031 Tax Group.

United States v. Okun, 453 F. App'x 364, 366-67 (4th Cir. 2011).

**B.   Timeliness of the Motions for a New Trial**

Federal Rule of Criminal Procedure 33 provides:

**(a) Defendant's Motion.** Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

**(b) Time to File.**
     **(1) Newly Discovered Evidence.** Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.
     **(2) Other Grounds.** Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Fed. R. Crim. P. 33. Because Okun filed his Rule 33 Motion nearly three years after the finding of guilt in his case, he must identify "newly discovered evidence" within the meaning of Fed. R. Crim. P. 33(b)(1).

To establish entitlement to a new trial based on newly discovered evidence, Okun must satisfy a five-faceted test by demonstrating that "(1) the evidence is newly discovered; (2) the defendant exercised due diligence; (3) the newly discovered evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence would probably result in acquittal at a new trial." United States v. Moore, 709 F.3d 287, 292 (4th Cir. 2013) (citation omitted). "Unless the defendant demonstrates all five of these factors, the motion should be denied." United States v. Pierre, 525 F. App'x 237, 239 (4th Cir. 2013) (citing United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989)). Moreover, the Court "should exercise its discretion to award a new trial sparingly and a jury verdict is not to be overturned except in the rare circumstances when the evidence weighs heavily against it." United States v. Smith, 451 F.3d 209, 216-17 (4th Cir. 2006) (internal quotation marks omitted) (citation omitted). As explained below, it is not necessary to address all five factors because Okun has failed to identify any newly discovered evidence.

### C. Okun's Claim for Rule 33 Relief

Okun's sole argument in his Rule 33 Motion is that the "jury would not have believed Okun committed fraud in support of a lavish lifestyle if newly discovered evidence of theft

6

by . . . immunized informants had been presented at trial." (Rule 33 Mot. 4 (capitalization corrected).) Okun then lists "Janet Dashiell" and "Daniel McCabe,"[2] and states that "[b]ank statements do not lie." (Id.) Okun then rambles about several wire transfers between the "1031 Tax Group Citibank account," "the 1031 Tax Group Wachovia account," and the "Colorado Capital Bank" account. (Id.) Okun claims that:

> Dashiell was President of the 1031 Tax Group and gave the orders on all money transfers. This money totaling approximately 13.8 million dollars remains missing and unaccounted for and was never received into several named bank accounts.

(Id.) Okun also claims that "the amount of 27.6 million dollars remains missing and unaccounted for" under the heading for McCabe's name. (Id. at 4-5.) Okun argues:

> In summary, Dashiell testified to safeguarding 18.5 million and she stole 13.8. This totals out to 32.3 million. McCabe reported 19.4 million to the bankruptcy court and stole 27.6 million. His total is about 47 million dollars. The sum total of funds either stolen or withheld totals nearly 80 million dollars without an accurate forensic accounting. The true total cannot be verified.
> This newly discovered evidence better explains why the 1031 Tax Group had a liquidity problem. The evidence clearly refutes the government's theory that Okun possessed intent to commit fraud because of his need to support a lavish lifestyle. Had this evidence

---

[2] Daniel McCabe was the manager of Investment Exchange Group, LLC ("IXG") one of the six QI companies Okun acquired. (PSR ¶ 29, 82.) When Dashiell learned that Okun was misappropriating QI funds, she informed McCabe. Both Dashiell and McCabe set up segregated accounts for 1031 Advance and IXG to conceal the client funds from Okun. (PSR ¶ 82.)

been presented at trial, it certainly would have swayed the jury and moved them to acquit.

(Id. at 5.) In support of his argument, Okun submitted a variety of copies of bank statements for accounts with Wachovia (account #XXXX3272) and Citibank (account #XXXX6689), Countrywide Bank (#XXXX3210), and Colorado Capital Bank (#XXXX0419) from 2006 and 2007. (See ECF Nos. 407-1 through 407-16.) Okun also identifies several other "discrepancies and omissions" in the bank statements in his supplemental pleadings. (See, e.g., ECF No. 408, at 1.)

Okun's claim is disjointed, rambling and difficult to discern. Nevertheless, the Court generously construes Okun to characterize certain bank statements that he attached to his Rule 33 Motion as "newly discovered evidence." Although poorly articulated, Okun seemingly contends that these statements demonstrate that, by safeguarding millions of dollars to avoid Okun's further misappropriation of money, Dashiell and McCabe stole money from these accounts.

### D.   Analysis

#### 1.   No Newly Discovered Evidence

The fundamental flaw with Okun's Rule 33 Motion is that he identifies no new evidence because notwithstanding Okun's confusing characterization of these records as "newly discovered

evidence," neither the records that he cites and attaches to his motion, nor the information contained therein, is new. To the contrary, the record reflects that counsel sought the production of these records and each of these bank records was available to Okun in advance of his trial. In fact, that is why Okun has them now.

On August 15, 2008, Okun, by trial counsel, requested the Court to issue subpoena duces tecum to twelve financial institutions for bank records related to 1031 Tax Group and IPofA. (ECF No. 61.) This request specifically included the records for Wachovia account #XXXX3272 and Citibank account #XXXX6689 for the period between August 1, 2005 and June 30, 2007. (Id. at 2, 4-5.) The Court granted Okun's motion and ordered that the subpoenaed records be produced by September 15, 2008. (ECF No. 62, at 2, 4-5, 9.) The Court also ordered that "counsel may remove these records from the Court so that they can be provided to the defendant's financial expert for his review and analysis and for possible use in the defendant's case in chief." (Id. at 9.)

On January 15, 2009, the Court also granted another of Okun's motion and ordered that additional bank records from Countrywide Bank and Colorado Capital Bank be produced by January 26, 2009. (ECF No. 131, 1-2.) The Order specifically

9

included "any and all accounts in the name of Janet H. Dashiell," or any accounts related to her, including Countrywide Bank account #XXXX3210; and "any and all accounts in the name of . . . Daniel McCabe," or any accounts related to him, including Colorado Capital Bank accounts #XXXX0790 and #XXXX0419.  (Id. at 1-2.)  Again, the Court ordered that the records were to be made available to Okun's financial expert for "review and analysis and for possible use in [his] case in chief."  (Id. at 2.)

Okun's trial was set for January 19, 2009.  Before trial, Okun filed a variety of lengthy substantive motions; and, on January 13, 2009, the Court continued the trial until March 2, 2009.  Okun sought two continuances of the trial date, however the Court denied both.  (ECF Nos. 133, 182, 190.)  As the Government correctly asserts, in those motions, Okun never asked for a continuance in order to afford him additional time to review the produced bank records from Wachovia, Citibank, Countrywide Bank or Colorado Capital Bank.  Thus, the records for each bank account Okun cites was subpoenaed, produced, and made available prior to his trial.  Because Okun had access to these records in advance of trial, he cannot make the requisite showing for a new trial because he cannot demonstrate that the bank accounts were newly discovered.  See United States v. Moore, 572 F. App'x 214, 215 (4th Cir. 2014) (finding report

10

attached to pretrial pleading was not newly discovered evidence because "newly discovered evidence means evidence discovered since the trial" (quoting United States v. Fulcher, 250 F.3d 244, 250 (4th Cir. 2001))); (United States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 2001) (citations omitted) (internal quotation marks omitted) (explaining that "the evidence must be, in fact, newly discovered, i.e., discovered since the trial").

The records for each bank account to which Okun cites as "newly discovered" were subpoenaed, produced, and made available well before his trial.  To the extent that Okun argues that, even though the records were available to his counsel, he did not personally review these records until after his trial, that fails to make the evidence newly discovered.  See United States v. Christy, 3 F.3d 765, 769 (4th Cir. 1993) (explaining that evidence is not "new" when available to defendant before trial and "'evidence' could have been discovered by 'the diligence of the defendant or his counsel'" (quoting United States v. Bales, 813 F.2d 1289, 1295 (4th Cir. 1987))); United States v. Provenzano, 620 F.2d 985, 997 (3d Cir. 1980).

For the first time in his Reply, Okun attempts to tailor his argument to the requirements for receiving relief under Fed. R. Civ. P. 33(b)(1), by claiming that:

11

> The evidence of Daniel McCabe's Reconciliation
> Report was not discoverable before trial.  When the
> 1031 Tax Group was thrown into bankruptcy, the trustee
> ordered McCabe to present an accounting of all 1031
> Tax Group funds which were held at Colorado Capital
> Bank (CCB).  McCabe's report was a response to a
> federal bankruptcy judge's court order.  The report
> was not discoverable to either the government or the
> defense.

(Reply 3, ECF No. 413.)  The Court fails to discern, and Okun

fails to explain, what information contained in the

"Reconciliation Report" was newly discovered evidence.  Instead,

it appears from Okun's own statement that the "Reconciliation

Report" was "an accounting of all 1031 Tax group funds which

were held at Colorado Capital Bank (CCB)."  (Id.)  As the record

demonstrates, the records from Colorado Capital Bank were

subpoenaed and produced to Okun's counsel before trial.  Thus,

at most, the Reconciliation Report contained duplicative

information as the information contained in the bank statements.

Cf. United States v. Makalou, No. 1:11cr489 (JCC), 2012 WL

2673145, at *3 (E.D. Va. July 5, 2012) (explaining that doctors'

affidavits were not newly discovered evidence where they relied

on information contained in medical records produced before

trial).[3]

---

[3] Okun also states:  "[c]oncerning the evidence of Janet
Dashiell's theft, should the court consider that finding a
needle in a haystack is discoverable, then the issue is
foreclosed from further consideration and is not newly
discovered."  (Reply 3.)  Thus, Okun seemingly concedes that the

Because Okun has identified no newly discovered evidence, he is not entitled to a new trial. For this reason alone, Okun's Rule 33 Motion will be denied.

### 2. Evidence is Immaterial and No Probability of Acquittal

Moreover, even if Okun had proffered newly discovered evidence, he has not demonstrated that this "evidence is material" to the issues at trial or that "the evidence would probably result in acquittal at a new trial." Moore, 709 F.3d at 292. Although Okun's arguments lack clarity, Okun appears to argue that, in his opinion, Dashiell and McCabe stole exchange funds and thus, were responsible for the 1031 Tax Group's bankruptcy or "liquidity problem." (Rule 33 Mot. 5.) Okun argues that, by keeping money away from Okun's predatory hands, Dashiell and McCabe "interfered with [Okun's] attempts to obtain those funds for the customers" to repay them, and "destroyed and cut off all of our credit, ruining all of my assets and businesses." (Id. at 8 (as paginated by CM/ECF).) Okun's arguments about whether Dashiell and McCabe stripped Okun of

---

bank accounts pertaining to Janet Dashiell's actions are not newly discovered. In any event, those records are not newly discovered, and the volume of records alone does not nullify the fact that information was "readily available" before trial). United States v. Williams, Nos. 96-4425, 96-4572, 96-4124, 1998 WL 13535, at *4.

available assets thereby preventing him from repaying customers are immaterial to his conviction.

Okun was prosecuted and convicted for removing money from the QI client exchange funds for his personal use, and deceiving exchangers as to the disposition of their deposited funds and the financial situation of the QIs.   The Court previously explained that Okun's intent or ability to repay the customers of the QIs was irrelevant:

> None of the exchange agreements indicate that Okun represented to the exchangers that he personally would accept the funds, use them for his own benefit, and then repay them.   The representations in the exchange agreements were that the funds deposited with the QI would be handled in a certain way; an intent to repay the funds after handling them in a different way than that promised would appear to be irrelevant. Indeed, it appears that representations of that sort closely modeled those made by the defendant in [United States v. Godwin, 272 F.3d 659, 667 (4th Cir. 2001)], in which the Fourth Circuit held that his intent to repay was irrelevant.   See Godwin, 272 F.3d at 667; see also United States v. Painter, 314 F.2d 939, 943 (4th Cir. 1963) (defendant's evidence of intent to repay irrelevant when he knowingly made false promises to investors).   Therefore, evidence of Okun's intent (or ability) to repay appears to be irrelevant because such an intent offers no proof of his good faith belief that these representations were true.

United States v. Okun, No. 3:08-CR-132, 2009 WL 414009, at *5-6 (E.D. Va. Feb. 18, 2009).

Finally, Okun cannot demonstrate that the proffered evidence "would probably result in acquittal at a new trial."

Moore, 709 F.3d at 292.   Simply put, extensive and overwhelming evidence existed that Okun misappropriated client exchange funds for his own use from six QI companies between August 2005 and April 2007 in violation of each company's exchange agreement. Okun ignored repeated advice that his acts were criminal, actively concealed his misappropriations of the client funds, and continued to defraud the exchangers.   (See generally PSR ¶¶ 16-97 (aptly summarizing evidence from trial)).   Okun's criminal acts began in 2005, well before Okun contends Dashiell and McCabe purportedly removed money from Okun's grasp in 2007. (See PSR ¶¶ 16-17.)   Okun has not established that the proffered bank accounts "would probably result" in a jury finding him not guilty of the twenty-three counts of fraud.[4]   Moore, 709 F.3d at

---

[4] For the first time in his Reply and then in the host of supplements filed after his Reply, Okun attempts to add supplemental argument to his Rule 33 Motion. (See, e.g., Reply at 8-30; ECF Nos. 414, 415, 440, 441-43.)   Okun rambles about "new law that was published two months after my conviction and prior to my sentencing" that "MUST be applied retroactively pursuant to Rule 33." (Reply 8.)   The cases he cites are various bankruptcy proceedings and legal malpractice proceedings against the law firms who represented the companies that Okun acquired.   Okun claims that these cases "relate[ ] to his Rule 33 because . . . upon retrial, I could offer up a defense based on new law and new evidence which would probably result in acquittal." (ECF No. 414, at 3.)   To the extent that this new claim is properly before the Court, Okun has failed to demonstrate how the "new" cases he cites based on his legal research are "newly discovered evidence." See Christy, 3 F.3d at 768-69 (explaining that no new "evidence" existed for motion for new trial when defendant provided new legal arguments based on post-trial legal research).   The Court has reviewed these

292.  And, in fact, the bank account records on which Okun relies would not yield such a result.

Accordingly, Okun's motion for a new trial (ECF No. 407) will be denied.

## IV.  OTHER OUTSTANDING MOTIONS

Okun has also filed a "MOTION FOR DEFAULT JUDGMENT AGAINST THE RESPONDENT/GOVERNMENT," (ECF No. 462), and "REQUEST FOR SUMMARY JUDGMENT" on pending motions (ECF NO. 464).  In the Motion for Default, Okun argues that the Government has failed to respond to his Motions to be Released on Bond Pending Resolution of his Rule 33 Motion and § 2255 Motion, and that, thus, default must be entered.  Okun also moves for summary judgment on his Motion to be Released on Bond Pending Resolution of his Rule 33 Motion.  The Court fails to discern, and Okun fails to explain, how a Motion for Default Judgment or a Motion for Summary Judgment are appropriate in this context.  Okun was convicted and has been lawfully detained.  Nothing cited by Okun would permit releasing him on bond.  Both motions will be dismissed as frivolous.

---

supplements and finds that they fail to alter the Court's conclusion that Okun has not presented any newly discovered evidence, and thus, lacks entitlement to Rule 33 relief.

The Court also notes that Okun has filed a motion to vacate pursuant to 28 U.S.C. § 2255.   By Memorandum Order entered June 6, 2013, the Court granted the Government's motion to stay the proceedings in Okun's § 2255 motion until the resolution of the Rule 33 Motion.   Accordingly, the Government shall have sixty (60) days from the date on which the Order on that motion is entered to file a response to Okun's § 2255 motion.

The Clerk is directed to send a copy of this Memorandum Opinion to Okun and counsel of record.

It is so ordered.

                          /s/       REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  March 25, 2015